UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL MELNITZKY,

*Plaintiff,*

–against–

PAT JONES and JONES AND HORAN,

*Defendants.*

07-CV-07380

### AFFIDAVIT IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND INJUNCTIVE RELIEF IN FURTHER SUPPORT OF MOTION TO DISMISS AND FOR INJUNCTION AND BY WAY OF REPLY TO AFFIDAVIT OPPOSING THAT MOTION

STATE OF NEW YORK      )
COUNTY OF NEW YORK    ) ss:

MICHELE HAUSER, being duly sworn, deposes and says:

1.      I am the attorney for the defendants herein, Patricia Jones ("Jones") and Jones and Horan Auction Team, Inc. ("JHAT," sued herein as Jones and Horan). I am fully familiar with the facts set forth. I make this Affidavit in further support of the defendants' motion to dismiss, in reply to the plaintiff and in opposition to the motion for an injunction.

2.      This court is familiar with the case and the record but so that this affidavit may stand on its own I reiterate certain relevant information. The plaintiff here, Michael Melnitzky ("the plaintiff" or "Melnitzky"), sues for relief allegedly denied him in the course of matrimonial litigation in Supreme Court, New York County. In that action, *Melnitzky v. Melnitzky*, the plaintiff was the defendant in his then-wife's action for a divorce, which bears a 1994 index number. Ms. Melnitzky is also known as Elizabeth Besobrasow ("Besobrasow") and she was represented in the matrimonial action, and continues to be represented in enforcement proceedings arising out of it, by one Virginia LoPreto ("LoPreto"). Following a jury trial on

grounds for divorce, the matrimonial proceeded to a bench trial on property. At the conclusion

of that trial, the Honorable Walter Tolub ("Justice Tolub") determined that certain safe deposit

boxes held exclusively in the name of Melnitzky contained marital property subject to equitable

distribution.[1] Justice Tolub rendered a Judgment of Divorce, a true and complete copy of which

is annexed as Exhibit C to plaintiff's Motion for Judgment on the Pleadings and incorporated by

reference, determining Besobrasow's entitlement to one-half of "(3) $799,696.37 in non-liquid

assets (watches, jewelry, etc.)," *id.* at 10. Thereafter, in November 1999, Besobrasow entered a

money judgment authorizing Besobrasow or her attorney to deliver to Christie's, a reputable

auction house, the contents of the safe deposit boxes at Marine Midland Bank (now and in 1999

known as HSBC), Commercial Bank (now North Fork Bank) and Apple Bank. A true and

complete copy of the money judgment is annexed hereto, made a part hereof and marked

"Exhibit 1." Melnitzky took an appeal from the judgment and from numerous interim orders, all

of which have been affirmed. Nonetheless, Melnitzky has steadfastly maintained (a) that the

Supreme Court, *at the trial on property*, fraudulently rejected his evidence and thus reached a

fraudulent conclusion that the contents of the boxes were subject to equitable distribution; (b)

that he was excluded from the process by which the contents of the boxes were inventoried and

as a result certain valuable items that were in the boxes did not appear on the inventories and

may be presumed to have been stolen or converted; (c) that he has been excluded from the boxes

---

[1]    At issue here are watches and jewelry contained in some of those safe deposit
boxes. At page 10 of the Judgment, Justice Tolub held, in part, that "property subject to
equitable distribution is: [...] (3) $799,696.37 in non-liquid assets (watches, jewelry)." He
further rule, "The defendant should be required to sell, through a reputable auction house,
the non-liquid assets...with the proceeds, after commission, being divided equally. *Id.* at 11.
These assets were held at Apple Bank, Commercial Bank and Marine Midland Bank. *Id.* at 6
¶10.

themselves for 10 years' time; and (d) that everyone who participated in removing the contents of the safe deposit boxes participated in a massive fraud.

3.    Based on the forgoing, Melnitzky contends that the defendants here, who ultimately were selected to receive the contents of the boxes and conduct an auction, conspired with LoPreto and Besobrasow as well as the Supreme Court in violation of the 14th Amendment of the United States Constitution, 42 U.S.C. §§1983, 1985, and state law.  The complaint herein is incorporated by reference.  In addition to seeking damages, plaintiff demands an injunction against future sales, future conspiring between defendants, on the one hand, and Besobrasow and LoPreto on the other, an accounting and the return of all property in the hands of the defendants.

## There Is No Basis for an Injunction Against the Defendants

4.    Insofar as the federal claims have been previously dismissed in a related action, *Melnitzky v. LoPreto*, by reason of legal insufficiency, and in a subsequent action, *Melnitzky v. HSBC*, on *res judicata* grounds, they serve as no basis for entering an injunction here.  Likewise, state law claims that Justices Tolub and Silbermann erred or even deliberately ignored plaintiff's proof and that anyone acting pursuant to the judgment entered in the matrimonial action conspired against, defrauded and converted the property of the plaintiff have been resolved by Judge Stein's decision, in *Melnitzky v. LoPreto*, that such claims sought to overturn the judgment and could not be litigated in the District Court.  All these claims were asserted against the gallery in the prior actions and dismissed; they cannot support an injunction.

5.    Plaintiff does, however, set forth a separate theory of liability on the state law claims grounded in fraud, conversion and civil conspiracy, and although he does not exactly allege that the amount in controversy is at least $50,000.00 he appeared to represent at oral argument that hundreds of thousands of dollars worth of personalty were stolen.  However, as

3

the Affidavit of Patricia Jones, sworn to the 23rd day of January 2008, attests, the defendants are

not in possession of the plaintiff's property, received what property they received pursuant to the

Orders of a court of competent jurisdiction, released the net proceeds of the auctions, and have

no continuing or prospective relationship with Besobrasow or LoPreto.  Under these

circumstances, there is nothing to enjoin and no risk of irreparable harm absent an injunction.

Additionally, for the reasons that follow, there is no reason to believe the plaintiff is likely to

succeed on the merits.  The motion for a temporary injunction should therefore be denied.[2]

**Plaintiff's Motion for Judgment on the Pleadings Must Be Denied
And Defendants' Motion To Dismiss Must Be Granted
Or Converted to a Motion for Summary Judgment and Resolved
In Favor of the Defendants**

6.     Plaintiff establishes no ground for judgment on the pleadings and he

appears in any event to seek summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure.  This motion, too, must be denied.  The only parties who could be entitled to

judgment on the pleadings or to summary judgment are the defendants.

7.     First, as noted, plaintiff's federal claims have already been dismissed in

two prior actions, *Melnitzky v. LoPreto* and *Melnitzky v. HSBC.*  JHAT was sued in both actions,

first as "John Doe Auction Gallery" and then as "John Doe Secret Auction Gallery."  The claims

pursuant to 42 U.S.C. §§1983 and 1985 were dismissed (against all parties) because there was no

allegation or inference of class-based animus and no state action within the meaning of Title 42.

The general due process claims were also dismissed.  As to these claims, this Court relied on *res*

---

[2]     Defendants take no position on so much of plaintiff's motion for judgment on the
pleadings as seeks permission to enter and inspect the safe deposit boxes.  Defendants
have no interest in the boxes and are not proper parties against whom such relief may be
granted.

*judicata* in dismissing the complaint in *Melnitzky v. HSBC* against all parties, including the auction house. Although Patricia Jones was not a party to either action, the decision that the plaintiff had failed to state a claim under 42 U.S.C. or under the 14th Amendment is nonetheless *res judicata*.

8.     Also in the two prior federal actions, the plaintiff contended, as he does here, that Supreme Court fraudulently held that his premarital property was subject to equitable distribution and directed its sale at auction, thereby conspiring with and otherwise aiding Besobrasow and LoPreto, and ultimately the auction house, to convert the property. In *Melnitzky v. LoPreto*, Judge Stein expressly held that these claims essentially sought to overturn the judgment in the matrimonial action and could not be litigated in the District Court. As noted, this Court, in *Melnitzky v. HSBC*, dismissed all claims as *res judicata*. The defendants are entitled to a dismissal of all claims previously resolved, and the plaintiff is not entitled to judgment on the pleadings for the same reason.

9.     The only claims that were not reached in either federal action and hence surviving the two dismissals are the state law claims of fraud, conversion and conspiracy based upon the alleged theft of certain individual items from the safe deposit boxes. As to these, the plaintiff is still not entitled to judgment because he falls far short of establishing that defendants took the property or even that they had an opportunity to take it. Indeed, properly understood, plaintiff seems to concede that he has no basis at all for contending that these defendants took the missing items, and documentary evidence outside of the pleading supports that inference. Accordingly, the defendants are entitled to judgment.

10.     Plaintiff's argument appears to be that certain property was in the safe deposit boxes when he last saw them but that the property did not appear on the "inventories."

5

Exhibits D and E to the complaint reflect what plaintiff contends are examples of jewelry he contends was stolen. *See* complaint at 7.  Concededly, assuming that the amount in controversy is at least $50,000.00, this Court has jurisdiction over that claim.  However, the claim has no merit, at least as against these defendants, and as to other people it has been repeatedly addressed and dismissed in state court.

   11. As the Affidavit of Virginia LoPreto explains, in preparing for trial in the matrimonial action she engaged the services of an appraiser to examine, document and appraise the contents of certain safe deposit boxes.  The appraiser then furnished LoPreto with inventories of the contents, copies of which inventories were shared with Melnitzky; the original inventories were admitted into evidence at the trial on property.  In 2006, the same copies were used by Jones and JHAT to document what property they received from the safe deposit boxes. Defendants had no connection with LoPreto or Melnitzky or Besobrasow or the boxes until 2006, when LoPreto engaged them to collect the contents for purposes of conducting the auction. Copies of these inventories are collectively annexed as "Exhibit 2," and included in the exhibit are the handwritten receipts of JHAT; "Exhibit 3" are the sales listings, cash out receipts and checks in payment of the proceeds.

   12. Plaintiff's Order To Show Cause for Preliminary Injunctive Relief Including a Temporary Restraining Order and a Stay of Any [] Further Sales of My Watch Collection reads, in pertinent part, at 3-4, "In addition to being subjected to auction sale, my pre marital collection of watches were subjected to theft by removal without being listed in the inventory [....]" It further reads, at 5, "For example after my wife and her attorney filed for divorce in 1994 *they* obtained unsupervised control over my safe deposit boxes under the pretext of discovery and the conduct of an inventory." (Emphasis added.)  The same document alleges

6

that entries to the boxes commenced in 1998, *eight years before these defendants* themselves
entered the boxes under the authority of a court order. *Id.* at 6. Finally, the motion reads:

> My allegations of ongoing conversion and ongoing theft
> are based even on the inventories submitted by my
> adversaries including the attorney for my former wife and y
> the internet web site of Jones and Horan which shows that
> my property was transported across state lines for sale
> without my monitoring or permission *while at the same
> time numerous items contained in my safe opposite* [sic]
> *boxes are entirely missing from the inventory provided by
> the attorney for my wife acting together with Jones and
> Horan.*

*Id.* at 7. In other words, plaintiff's claim appears to be that the missing items, assuming there are

any, were missing from the inventories themselves–prepared not by these defendants but by

Besobrasow's appraiser years before these defendants came on the scene.[3] The complaint itself

accuses LoPreto and Besobrasow of having dissipated plaintiff's assets and transported the

remainder to these defendants (*id.* at 2) and contends that the conversions have gone on since

1994 ("The fraud perpetrated since 1994 has subjected my assets to conversion and theft at

numerous opportunities unlawfully created during the last ten years of unsupervised entry into

my safe deposit boxes," *id.*).

      13.    There is no real question that the gist of the state law claims unresolved to

date is that certain items of jewelry that did not appear on JHAT's sales listings was stolen, but

---

[3]     In plaintiff's affidavit in opposition to defendants' motion to dismiss ("Opp.")
Melnitzky asserted that the items listed in Exhibits D and E to the complaint did not appear
on the auction sales and were stolen, *id.* At 2, but plaintiff also states that he has not
examined the boxes himself since 1994. Opp. at 3. At count 5 of the complaint plaintiff
demands relief on the grounds that ""Pat Jones and Jones and Horan subjected my assets to
theft of numerous items such as the items mention[ed] in my attached Exhibits "D" and "E",
which are missing from the inventories provided by my adversaries." Complaint at 20-21;
*see* Opp. at 4.

there also is no question that plaintiff himself contends the missing items *also* did not appear on

the *inventories prepared by LoPreto and Besobrasow* prepared years before.  Page 9 of the

complaint reads, in pertinent part, as follows:

> Here are examples of the items from my safe deposit boxes
> which are missing from the inventories of Ms. LoPreto and
> the sales listings of Jones and Horan[4] about which Jones
> and Horan will be subjected to deposition.
> MISSING FROM THE INVENTORIES SUBMITTED BY MY ADVERSARIES
> Pate[] Philippe platinum wristwatch with diamond
> numerals purchased on Nov. 17, 1982 at Phillips
> Gallery for $1400.  Exhibit "D" shows the purchase
> invoice and my cataloging page also dated Nov. 17,
> 1982. and is therefore documented as my pre
> marital asset from before the 1984-94 marriage.
> Two gold bracelets with engraved antique seals
> purchased on Oct. 25, 1979 at PB 84 (a division of
> Sotheby's) for $3630 and $2090[] Exhibit "E"
> shows the purchase invoice and my cataloging page
> also dated Oct. 25, 1

14.    The motion for an injunction makes the same argument:

> Exhibits "D" and "E" identify and document examples of items
> that I consider stolen from my safe deposit boxes and they are
> described as follows:
> Patek Philippe platinum writstwatch with diamond numerals
> purchased on Nov. 17, 1982 at Phillips Gallery for $1400.  Exhibit
> "D" shows the purchase invoice and my cataloging page also dated
> Nov. 17, 1982. [sic] and is therefore documented as my pre marital
> asset from before the 1984-94 marriage.
> Two gold bracelets with engraved antique seals purchased on Oct.
> 25, 1979 at PB 84 (a division of Sotheby's) for $3630 and $2090
> Exhibit "E" shows the purchase invoice and my cataloging page
> also dated Oct. 25, 1

*Id.* at 7.

_____

[4]    Although the motion for an injunction demands sales listings, plaintiff obviously has
them.  They are, however, provided herewith.

15.    Moreover, plaintiff's Exhibit D appears as part of the Record on Appeal from the July 13, 2003 Order of the Honorable Judith Gische, J.S.C.  A true and complete copy of the Notice of Appeal from that Order, and the Order itself, are annexed hereto, made a part hereof and marked "Exhibit 4."  The Record on Appeal contains an undated Affidavit of Michael Melnitzky, a true and complete copy of which is annexed as "Exhibit 5."  The Court's attention is respectfully drawn to paragraph 13 of that exhibit, which makes reference to Melnitzky's "complaints of valuable watches missing from the inventory lists of the safe deposit contents." Paragraph 22 of the same exhibit reads this way:

> 22.    Attached as exhibit "F" are pages from the inventory of my safe deposit box submitted as part of discovery to Ms. LoPreto and the court prior to the inventory which LoPreto conducted with her associates.  As before the circled listings describe items which are missing from the inventory of Ms.LoPreto but which I therefore claimed to be stolen.
> page one shows a Patek Phillippe Wrist purchased 11/17/81.[....]

The affidavit attaches an "Inventory of Missing Safe Deposit Items" marked "Exhibit C" and referencing a Patek Philippe Wrist watch.  The same affidavit attaches a document headed "Invoices of Missing Safe Deposit Item[] Showing Dates of Purchase" with a handwritten notation in the margin highlighting the Patek Philippe item.  The documents annexed as unmarked Exhibit D to the complaint in this action are obviously the same as the documents filed in support of the 2004 appeal filed by Melnitzky in an action to which Jones and JHAT were not parties.

16.    In light of the fact that plaintiff claims not to have had access to the safe deposit boxes for 10 years, he does not (and cannot) claim that items he says were stolen years before had somehow reappeared in the boxes from which the defendants at bar received the property to be auctioned.  Absent such an allegation, there is no claim that these defendants ever

possessed the allegedly stolen items–let alone that they themselves misappropriated them or participated in their disposal–and plaintiff himself admits they do not appear either on the inventories or the sales listings.  Under these circumstances, there is no claim that the defendants JHAT and Patricia Jones converted or stole the allegedly missing property or that they conspired with anyone to sell it.

17.     Finally, to the extent plaintiff contends that defendants converted or otherwise misappropriated his share of the auction proceeds, Justice Silbermann's June 8, 2006 Order authorized the plaintiff to hold back up to $150,000.00 of his share as security for future support payments.  The Affidavit of Virginia LoPreto states that the amount she was authorized to hold back was subsequently raised.

18.     For the forgoing reasons, and those stated in the motion to dismiss and for an injunction against new filings, the motion for an injunction should be denied, the complaint should be dismissed and the plaintiff enjoined from new filings against these defendants.

_____<br>
Michele Hauser

Sworn to before me this
25th day of January 2008

Estelle Ginsberg
Notary Public, State of New York
No. 01GI4728346
Qualified in Queens County
Commission Exp. Nov. 30, 2008
2010

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL MELNITZKY,<br><br>                     *Plaintiff*,<br><br>      –against–<br><br>PAT JONES and JONES AND HORAN<br>AUCTION TEAM, INC., s/h/a JONES<br>AND HORAN,<br><br>                     *Defendants*. | 07-CV-07030 |

**AFFIDAVIT IN SUPPORT OF MOTION TO DISMISS,
IN REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS,
AND IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR AN INJUNCTION
AND FOR JUDGMENT ON THE PLEADINGS**

STATE OF NEW HAMPSHIRE      )
COUNTY OF *Hillsborough*     ) ss.:

      PATRICIA JONES, being duly sworn, deposes and says:

      1.      I am a defendant in this action as well as the principal of Jones and Horan

Auction Team, Inc., sued herein as Jones and Horan Auction Team.  I have knowledge of the

facts asserted in the complaint filed in this action and file this affidavit in support of the motion

to dismiss, by way of reply to plaintiff's opposition on that motion, and in opposition to the

plaintiff's motions for an injunction and judgment on the pleadings.

      2.      Jones and Horan Auction Team, Inc. ("JHAT") is an auction gallery with a

business specializing in the sale by auction of watches and clocks.  In 2006 we were contacted by

one Virginia LoPreto ("LoPreto"), who represented herself as the attorney for one Elizabeth

Besobrasow ("Besobrasow") and advised that she had been referred to us by Christie's, a

reputable auction house in New York, New York.  We understood that pursuant to a judgment of

divorce in a matrimonial action between Mr. Melnitzky ("Melnitzky" or "the plaintiff") and

Besobrasow, LoPreto had been authorized to engage an auctioneer to sell at auction certain

personalty, largely consisting of a trove of antique watches but also including certain other

jewelry and small items, so that the proceeds could be distributed in the course of the matrimonial

action.  Neither I nor JHAT had any prior knowledge of the relevant events and or acquaintance

with Melnitzky, Besobrasow or LoPreto.  We were given copies of the judgment in the divorce action

and an Order of the Supreme Court, State of New York, authorizing LoPreto and Besobrasow not

just to engage an auction house but also to maintain the anonymity of the house *vis-a-vis* the

plaintiff so as to ensure that the sale would go through unimpeded.

      3.     In accordance with the consignment agreement, we took possession of the

property to be auctioned.  The property in issue was contained in safe deposit boxes at North

Fork Bank, HSBC and Apple Bank.  On August 15 and August 16, 2006 and again on December 4,

2006 JHAT attended at the banks in the presence of LoPreto and Besobrasow as well as officers of

each respective bank, equipped with inventories provided to us by LoPreto.  We examined the

contents of the boxes, marked the items of jewelry that JHAT received in accordance with the

consignment agreement and the Judgment, and closed the boxes.  We took no jewelry other than the

items designated on the typed inventory lists that were provided to us by LoPreto and except for items

which were noted on Schedule A that included Lot 128: 3sectional hinged locket and Lot 129: 4 pen

knives, lot of 12 ball formwatches, 1 pendant watch and sliding purse watches.  These documents are

collectively annexed as Exhibit 2 to the Affidavit of Michele Hauser filedtogether herewith.

I myself initialed copies of the inventories to acknowledge receipt of the items that JHAT

received; other items, designated "MM" on the inventories, were left in the boxes.  But the

inventories themselves were provided to us and we did not participate in listing what property was

in the boxes or any of them, except to the extent of Schedule A; rather, all we did was memorialize

which items on the existing inventories were received by us and which were not.

4.      JHAT provided LoPreto with lists identifying each item received from the boxes (with the page and item number taken from the original inventories provided to us by LoPreto) as well as the auction (by date) to which it had been consigned, and copies of these documents are appended to the Affidavit of Michele Hauser as Exhibit ⟨3⟩ . The items consigned to JHAT were then sold at four separate auctions, the first on November 18, 2006, the second and third on May 5 and 6, 2007 and the fourth on June 24, 2007.  We subsequently accounted to LoPreto what we had sold at auction, how much money per item the auction had yielded, and how much we forwarded to LoPreto (after deducting our per item fee); true copies of these documents are appended as Exhibit  3  to the Affidavit of Michele Hauser.  We also, of course, sent checks to LoPreto representing the net proceeds.  The June 24, 2007 auction concluded our consignment agreement with Besobrasow and LoPreto and we hold no other property received from the safe deposit boxes here in issue; nor do we expect to receive any additional property from Besobrasow or anyone on her behalf, including LoPreto.

5.      For the forgoing reasons, we respectfully request that the motions for injunctive relief and judgment on the pleadings be denied and that judgment instead be entered in favor of the defendants.

_____
                    Patricia Jones

Sworn to before me this
_____ day of January 2008

_____
      Notary Public

JESSY-LYN TETRO
NOTARY PUBLIC
NEW HAMPSHIRE
MY COMMISSION EXPIRES JUNE 27, 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL MELNITZKY,

Plaintiff,

—against—

PAT JONES and JONES AND HORAN,

Defendants.

07-CV-07380

---

### AFFIDAVIT IN OPPOSITION TO PLAINTIFF'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND INJUNCTIVE RELIEF IN FURTHER SUPPORT OF MOTION TO DISMISS AND FOR INJUNCTION AND BY WAY OF REPLY TO AFFIDAVIT OPPOSING THAT MOTION

STATE OF NEW YORK        )
COUNTY OF NEW YORK    ) ss.:

VIRGINIA LOPRETO, being duly sworn, deposes and says:

1.    I am the attorney for Elizabeth Besobrasow ("Besobrasow") and I have knowledge of the facts set forth.  I make this Affidavit in support of the captioned motions of the defendants and in opposition to plaintiff's motions for judgment on the pleadings, an injunction and other relief.

2.    I represented Besobrasow from the inception of the matrimonial action until its conclusion and continue to represent her today in connection with proceedings arising out of that case.  In preparing for the trial on property we were authorized to examine Melnitzky's extensive collection of watches and jewelry for purposes of having it appraised.  I retained the services of a certified appraiser, who examined the contents and prepared inventories.   True copies of those inventories are annexed to the Affidavit of Michele Hauser.  As the defendants' papers attest, I provided copies of those inventories to the defendants when they received the contents of the boxes.  They subsequently provided me with the copies of the

sales listings and the cash out receipts, as well as checks for the net proceeds.

        3.     Although the original money judgment annexed as Exhibit 1

provided that Besobrasow, and I on her behalf, could hold back $150,000.00 of

Melnitzky's share of the auction proceeds to secure support payments, a subsequent order

was obtained authorizing monies in excess of that amount to be applied to satisfy an

outstanding judgment for child support and subsequent money judgment. I am in the

process of entering a second money judgment; the two judgments come to close to

$100,00.00.  Once the judgment is entered and I have done the necessary calculations to

determine the amount due and owing, I shall remit the balance of Melnitzky's share to

him. However, we hold no other property and contemplate no further business in this

matter with the defendants herein. A copy of the order is annexed as Exhibit 6.

                                  Virginia A. LoPreto

Sworn to before me this
25th day of January 2008

_____
      Notary Public
Qualified in Kings County
My commission expires 09/22/10